**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Caroline Buerkle,<br><br>      Plaintiff,<br><br>v.<br><br>New York Presbyterian Weill Cornell Medical Center, by and through its officers, Agents, and/or employees,<br><br>      Defendant. | **COMPLAINT**<br><br>Jury Trial Demanded<br><br><br>Civil No.: 1:22-cv-1132 (TJM/DJS) |

      Plaintiff, Caroline Buerkle, by and through her attorneys, Cherundolo Law Firm, PLLC, brings this Complaint against Defendant New York Presbyterian Weill Cornell Medical Center, individually and by and through its agents, officers and/or employees, and hereby alleges as follows upon information and belief:

### INTRODUCTION

      1.    Plaintiff Caroline Buerkle (hereinafter "Plaintiff" or "Plaintiff Buerkle") is a healthcare professional, who at all relevant times held sincere religious beliefs against the COVID-19 vaccines because they were either developed from, or tested with, aborted fetus cell lines, or for other religious reasons that were explained to Defendant. Because of Defendant's unlawful actions in initially approving and then rescinding/denying her meritorious exemption request, the Plaintiff was faced with an immediate "choice" to either (1) receive a COVID-19 vaccine in direct violation of her conscious and sincerely held religious beliefs, or (2) be terminated from her employment with Defendant as a consequence of exercising her fundamental and statutory rights to refuse administration of the COVID-19 vaccines. "Such a Hobson's choice is actually no choice at all." Smith v. Grams, 565 F.3d 1037, 1046 (7th Cir. 2009).

1

2.      As a result of ultimately denying Plaintiff's meritorious religious exemption, and refusing to provide any reasonable accommodations, including a testing option, Plaintiff Buerkle was terminated by Defendant effective December 1, 2021.

3.      Plaintiff now brings this lawsuit seeking recovery against Defendant New York Presbyterian Weill Cornell Medical Center, by and through its agents, officers and/or employees (hereinafter "Defendant") for violation of Title VII of the Civil Rights Act of 1964, § 2000e et seq. ("Title VII"), on the grounds that Defendant failed to reasonably accommodate her sincerely held religious beliefs and objection to a mandatory COVID-19 vaccination policy, and, as a result, illegally terminated her employment.  Plaintiff also asserts concurrent claims under the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. arising from the instant events.  This is not an action challenging the legality of the COVID-19 vaccination policy itself.  By this action, Plaintiff seeks all legal and equitable relief available under the law, including back pay, front pay, lost future earnings, out of pocket costs, compensatory damages, punitive damages, and attorney's fees and costs. Plaintiff demands a trial by jury.

## PARTIES

4.      Plaintiff, Caroline Buerkle, at the time of all relevant events herein, including when she was terminated, was a resident of the State of New York.  As a result of her termination and having been forced to seek and find other employment, Plaintiff now resides in Florida. Thus, for purposes of this action and at the time of filing, Plaintiff is a citizen of the State of Florida.

5.      At all relevant times, Plaintiff Buerkle was an "employee" of Defendant within the meaning of title VII and applicable state and city laws.

6. At all times herein referenced, Defendant, New York Presbyterian Weill Cornell Medical Center, is an 862-bed healthcare facility with more than 500 employees, with a principal address of 525 East 68th Street, New York, New York 10065.

7. At all relevant times, Defendant was Plaintiff's "employer" within the meaning of Title VII and applicable state and city laws. For purposes of this action, Defendant is a citizen of New York.

## JURISDICTION AND VENUE

8. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and specifically 42 U.S.C. § 2000e-5(f)(3) conferring original jurisdiction.

9. This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332 (diversity), because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

10. This Court also has jurisdiction over this action arising out of the Civil Rights Act pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

11. Venue is proper in this District.

## CONDITIONS PRECEDENT

12. Plaintiff Buerkle timely filed (within 180 days of the alleged discriminatory act) a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging religious discrimination under Title VII. The charge was assigned charge number 16G-2022-00661.

13. The EEOC then issued a "Notice of Your Right to Sue" dated August 2, 2022, and this lawsuit is filed within 90 days of Plaintiff's receipt of her "Determination and Notice of Rights" letter making it timely. *See* Exhibit "A".

14. Plaintiff Buerkle further timely filed a Complaint with the New York State Division of Human Rights ("DHR") on December 2, 2021. The complaint was assigned case number 10214567.

15. Upon information and belief, the DHR dismissed the complaint.

16. All conditions precedent have been performed or have occurred. Plaintiff has exhausted all administrative remedies available under Title VII prior to filing this action.

## FACTUAL ALLEGATIONS AND BACKGROUND

17. Plaintiff Buerkle was employed by New York Presbyterian Weill Cornell Medical Center ("the Hospital") as a registered nurse until her termination on December 1, 2021.

18. Prior to December 1, 2021, and specifically on or about June 11, 2021, Defendant announced via a Memorandum that all persons employed or affiliated with the Hospital were required to receive the COVID-19 vaccination by September 1, 2021, or apply for a religious exemption by August 1, 2021.

19. On July 23, 2021, Ms. Buerkle promptly informed Defendant, in writing, that she was requesting an exemption to the COVID-19 vaccination mandate because of a conflict between the subject requirements and her religious beliefs, practices, and/or observances.

20. Specifically, Mr. Buerkle advised Defendant as follows:

> I respectfully request an exemption because I hold a sincere and genuine religious belief contrary to the practice of vaccination for immunization against this virus. I believe my body is a temple of the Holy Spirit and as such I must conduct a moral assessment of what I inject/put into my body. I greatly appreciate NYP's commitment to inclusion and support for all of its employees

4

and I thank you for respecting my firmly held religious beliefs.

21. Upon information and belief, Defendant's religious exemption panel reviewed Ms. Buerkle's request and determined via a communication on August 14, 2021, that she had not provided sufficient information concerning her purported religious beliefs and how obtaining a COVID-19 vaccination would conflict with such beliefs. Plaintiff Buerkle was advised that her initial request was denied, and that she could submit additional information in support of her request. *See* Exhibit "B".

22. On August 18, 2021, Ms. Buerkle submitted additional information with regard to her exemption request, which stated as follows:

> 1 Corinthians 6:19-20 - body is the temple of God and should not be defiled
> The Pfizer vaccine was protein tested using the abortion-derived cell line HEK-293. These human cells were taken from an aborted unborn child, and have been "cultivated" and were used to develop the various treatments for COVID-19. The Moderna vaccine was also protein tested using the same abortion-derived cell line HEK-293. Johnson & Johnson has publicly admitted to using human cells which were taken from an aborted unborn child, and which today have been called cell line PER.C6 for the development of their COVID-19 vaccine.
> I believe it to be morally wrong to use the methods of so-called fetal therapy to take the human fetus at some stage of his or her development, to cause an abortion, and then to use the body parts in attempts to treat diseases. Abortion is a serious sin, and I cannot find any justification for it, even if someone may possibly benefit from the destruction of a conceived human life. Contributing inevitably to ever wider spread and commercialization of abortion, this practice presents an example of glaring immorality and is criminal. It is sin, and I cannot consistent with my faith, participate in it or benefit from it. As such, and because of the principles of the sanctity of human life drawn from the entirety of the Holy Scripture, which principles are partly exemplified as the principles underlying the Bible verse above, I cannot in good conscience, based on my religious faith, take these vaccines.

23. In her August 18, 2021, written request, Plaintiff explained the conflict with the vaccine mandate and the religious basis for it.

24. Specifically, Plaintiff objected to the vaccine mandate on religious grounds because the vaccine was developed using aborted fetal cell lines.

25. After Plaintiff's August 18, 2021, request was submitted, and upon information

and belief, on August 30, 2021, and in response to the COVID-19 vaccine emergency regulation issued by the New York State Department of Health on or about August 26, 2021 (the "DOH Mandate"), the Defendant amended its exemption to religious requests and determined that "NYP can no longer consider any religious exemptions to the Covid vaccination- even those previously approved" and that Plaintiff was required to receive at least one dose of the COVID-19 vaccine by September 15, 2021.[1]

26. Although the DOH Mandate does not contain an express provision for granting religious exemptions, and Defendant having advised that it would no longer consider religious exemptions requests, the Defendant did accept Ms. Buerkle's request for a religious exemption to the COVID-19 vaccination policy on October 7, 2021. *See* Exhibit "B".

27. Upon information and belief, Defendant accommodated Ms. Buerkle's religious exemption request, in part, due to a federal court's injunction precluding the DOH from enforcing its Mandate to the extent it requested employers to deny or revoke approved or pending religious exemption requests.

28. Upon information and belief, given Defendant's acceptance and/or approval of Plaintiff Buerkle's religious exemption, she was not required to the COVID-19 vaccine, but could still be employed by following masking and testing/screening rules.

29. Upon information and belief, and in accordance with Defendant's policy for unvaccinated employees, Plaintiff Buerkle was required to undergo weekly COVID-19 screenings and wear appropriate protective wear, i.e., masks, requirements by which she abided at all relevant times after her religious accommodation and exemption was approved on October 7, 2021.

30. Upon information and belief, on November 17, 2021, and in response to a

---

[1] This notification was received before Ms. Buerkle was approved for a religious exemption on October 7, 2021.

November 15, 2021, letter issued by the Department of Health, Defendant's policy changed with regard to the COVID-19 vaccination and religious exemptions and advised Plaintiff that the state's vaccination mandate no longer permits religious exemptions, and that all employees must receive the vaccination by November 22, 2021 (an extension was granted until November 29, 2021).

31. Specifically, on November 15, 2021, the Department of Health issued a "Dear Administrator Letter" that stated the DOH's position on this issue.

32. At the time of filing, this letter remains posted on the Department of Health's website and has not been retracted or rescinded.

33. The Letter was issued by Jennifer L. Treacy, Deputy Director, Office of Primary Care and Health Systems Management.

34. The Letter is addressed to "Chief Executive Officers, Nursing Home Operators and Administrators, Adult Care Facility Administrators, and Home Care and Hospice Administrators."

35. The Letter begins by reiterating the COVID-19 vaccination requirement and stating that, beginning November 22, 2021, it applies to covered employees who were previously granted religious exemptions. But then the Letter directs: "Facilities should have a process in place to consider reasonable accommodation requests from covered personnel based on sincerely held religious beliefs consistent with applicable Federal and State laws, including Equal Employment Opportunity (EEO) laws such as Title VII of the Civil Rights Act and the NYS Human Rights Law, and their applicable guidance."

36. The Letter makes clear that the Department of Health does not consider the COVID-19 vaccination mandate to be inconsistent with federal and state EEO laws that require reasonable accommodations for employees' sincerely held religious beliefs. Furthermore, the

Letter provides no limitations or restrictions on how covered entities may comply with their obligations under federal and state EEO laws.

37. The EEOC has published extensive guidance relating to COVID-19 (which the "Dear Administrator Letter" instructed healthcare facilities to consider). In "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws," (updated July 12, 2022) (available at www.eeoc.gov), the EEOC has explained:

> An employee who does not get vaccinated due to a disability (covered by the ADA) or a sincerely held religious belief, practice, or observance (covered by Title VII) may be entitled to a reasonable accommodation that does not pose an undue hardship on the operation of the employer's business. For example, as a reasonable accommodation, an unvaccinated employee entering the workplace might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19, be given the opportunity to telework, or finally, accept a reassignment.

Id. § K.2 (Vaccinations – Overview); see also id. § L.3 ("In many circumstances, it may be possible to accommodate those seeking reasonable accommodations for religious beliefs, practices, or observances without imposing an undue hardship."). These are precisely the reasonable accommodations at issue here – testing, masking, and sanitizing – that Plaintiff Buerkle could have followed in lieu of the COVID-19 vaccine.

38. Upon information and belief, the New York Department of Health has never issued any guidance or directive(s) to covered entities that they may not grant religious exemptions in accordance with federal and state equal employment opportunity laws.

39. Upon information and belief, it does not violate the Department of Health's Mandate for a covered entity to grant a covered employee a religious exemption to the COVID-19 vaccination requirement in accordance with federal and state equal employment opportunity laws.

40. Upon information and belief, the Department of Health has never issued any guidance or directive(s) to covered entities that employees who have been granted religious

exemptions in accordance with federal and state equal opportunity laws may not work onsite or engage in direct patient care activities.

41. Upon information and belief, the DOH Mandate does not prohibit religious exemptions; rather, it is silent on the issue of religious exemptions.

42. Upon information and belief, the DOH Mandate does not purport to preempt the rights and protections afforded employees under federal and state equal employment opportunity laws.

43. Upon information and belief, since August 26, 2021, and continuing to the present, unvaccinated health care workers with pending or approved religious exemptions have been working onsite and/or engaging in direct patient care activities in health care facilities throughout New York State.

44. Upon information and belief, since August 26, 2021, and continuing to the present, the Department of Health has never penalized a covered entity for allowing unvaccinated health care workers with pending or approved religious exemptions to work onsite and/or engage in direct patient care activities.

45. It would be pure speculation for Defendant to argue that it would have violated state law and potentially subjected the hospital to fines and penalties if it had continued to honor Plaintiff's religious exemption.

46. After the aforementioned communication was issued November 17, 2021, upon information and belief, in response to the DOH's letter dated November 15, 2021, Defendant refused to honor Plaintiff's previously granted religious exemption, determined that it could not offer any reasonable accommodation from the vaccination requirement without undue hardship, ultimately set a deadline to become vaccinated by November 29, 2021, and advised that employees

who did not receive the vaccination would be deemed to have "resigned".

47. Ms. Buerkle, for sincerely religious reasons, known to the Defendant, continued to abstain from receiving the COVID-19 vaccination, and her employment with Defendant was wrongfully terminated on December 1, 2021.

48. Defendant after November 15, 2021, never questioned Plaintiff about the religious nature or sincerity of her religious beliefs, practices or observances.

49. Defendant after November 15, 2021, never made a request for verification of the sincerity or religious nature of Plaintiff's professed beliefs, practices or observances.

50. Defendant after November 15, 2021, never asked for an explanation of how Plaintiff's religious beliefs, practices, or observances conflicted with its vaccination mandate.

51. Defendant after November 15, 2021, did not consider possible reasonable accommodations, including a testing option.

52. Defendant could have reasonably accommodated Plaintiff's religious beliefs, practices, and observations without any undue hardship on its operations by allowing a testing option at Plaintiff's expense.

53. A testing option would not require Defendant to bear any financial cost to accommodate Plaintiff's religious beliefs, practices or observations because Plaintiff would have paid for the testing out-of-pocket.

54. A testing option would not unreasonably burden Defendant's business by increasing the risk of spreading COVID-19 because a person with a negative test result does not have the virus.

55. On the other hand, a fully vaccinated person can still have the virus and spread it without ever knowing they are positive.

56. Testing is the most effective way to stop the spread of COVID-19 in the workplace.

57. In response to the vaccine mandate for federal workers, the President of the United States by way of the White House Press Secretary stated, "testing once a week, we feel, and we think the American people feel, is quite reasonable."

58. Even Dr. Anthony Fauci stated, "one of the things that is clear from the data is that the vaccines don't protect overly well against infection."

59. It would not have caused an undue risk to other employees and/or patients of catching COVID-19 to allow Plaintiff Buerkle to continue following the same health and safety protocols – testing, masking, sanitizing, etc. – that were in place before Defendant announced its mandatory vaccination policy. Prior to the mandatory vaccination policy, these precautions were deemed adequate to mitigate the risk of catching or transmitting COVID-19.

60. Nothing changed about the dangers of COVID-19 in the Fall 2021 to render these precautions ineffective. On the contrary, rates of hospitalizations and deaths under the "Delta" variant were declining by October 2021, and the "Omicron" variant, which became dominant in December 2021, is widely acknowledged to be less virulent than previous waves have been.

61. Significantly, it was well-established by the Fall 2021 that the available COVID-19 vaccines do not prevent the transmission of the virus.

62. In short, there is no objective, scientific basis for Defendant to argue that continuing to grant Plaintiff Buerkle a religious exemption to the COVID-19 vaccination policy would have posed an undue risk to other employees or patients of becoming sick from COVID-19. This is pure speculation.

63. Defendant ultimately refused to honor the religious accommodation and exemption it previously granted to Plaintiff, refused to entertain alternate accommodations, and wrongfully terminated her employment effective December 1, 2021.

64. Plaintiff has earnestly, honestly, and in good faith sought religious exemptions and reasonable accommodations from Defendant's Mandatory Covid-19 Vaccination Policy, but has been rejected at every turn.

65. Plaintiff has complied with all requirements for seeking an accommodation and exemption based upon her sincerely held religious beliefs, and otherwise complied with all of the requirements Defendant established for seeking a religious exemption from the Mandatory Covid-19 Vaccination policy. Indeed, Plaintiff has scratched and clawed to obtain relief from the Mandatory Covid-19 Vaccination Policy to no avail resulting in this lawsuit.

66. As a result of being terminated on December 1, 2021, Plaintiff Buerkle was forced to find other employment in the nursing field.

67. Fortunately, Plaintiff obtained a position at the University of Florida as a registered nurse which does not require her to take the COVID-19 vaccination.

68. For this new position, Plaintiff was forced to relocate to Jacksonville, Florida.

69. Plaintiff receives less pay at University of Florida that she did during her employment with Defendant.

### AS AND FOR A FIRST CAUSE OF ACTION SOUNDING IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, et seq. AGAINST THE DEFENDANT HEREIN PLAINTIFF HEREBY ALLEGES AS FOLLOWS:

70. Plaintiff hereby realleges and adopts each and every allegation in the aforementioned paragraphs as if fully set forth herein.

71. Title VII of the Civil Rights Act of prohibits Defendant from discriminating

against its employees, including the Plaintiff, on the basis of an individual's sincerely held religious beliefs. *See* U.S.C.§2000e-2(a).

72. Plaintiff has a sincere religious belief that precludes her from receiving a COVID-19 Vaccine.

73. Plaintiff has a right to request an exemption, called a religious exemption or reasonable accommodation, from Defendant's vaccine mandate that conflicts with her sincerely held religious beliefs, practices, or observances.

74. Plaintiff informed Defendant of those beliefs, and requested a religious exemption and reasonable accommodations from the vaccine mandate, which was originally granted.

75. However, after November 15, 2021, Defendant has failed to engage in the "interactive process" with Plaintiff regarding her religious accommodation request in accordance with EEOC's guidelines concerning religious accommodations requests in the context of Title VII of the Civil Rights Act of 1964.

76. Defendant failed to provide Plaintiff with religious exemptions and reasonable accommodations and instead terminated her employment thereby discriminating against Plaintiff because of her religious belief in violation of federal law.

77. Upon information and belief, Defendant intentionally revoked Plaintiff's religious accommodation request that was initially granted with malice and reckless indifference to her protected rights, which resulted in her termination, and subjected her to unlawful discrimination on account of her religion in violation of Title VII.

78. As a direct, natural foreseeable and proximate result of the actions and inactions of Defendant, i.e., discriminatory conduct, by and through its agents, officers and/or employees,

Plaintiff was terminated from her employment on December 1, 2021, and has suffered pecuniary and nonpecuniary injuries, losses, and/or damages, including a violation of her statutory rights, economic losses/loss of employment, out of pocket expenses, loss future earnings, as well as compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity and humiliation.

**AS AND FOR A SECOND CAUSE
OF ACTION SOUNDING IN VIOLATION OF STATE HUMAN RIGHTS LAW
AGAINST THE DEFENDANT HEREIN
PLAINTIFF HEREBY ALLEGES AS FOLLOWS:**

79. Plaintiff hereby realleges and adopts each and every allegation in the aforementioned paragraphs as if fully set forth herein.

80. By her his request for a religious exemption to the mandatory COVID-19 vaccination policy and terminating her employment, Defendant violated Plaintiff Buerkle's rights under the New York State Human Rights Law.

81. The State Human Rights Law provides, inter alia, that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's . . . creed . . . to discharge from employment such individual . . . ." N.Y. Exec. Law § 296(1)(a). The State Human Rights Law further provides that "[i]t shall be an unlawful discriminatory practice for any employer . . . to impose upon a person as a condition of obtaining or retaining employment . . . any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion . . . unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business." Id. § 296(10)(a).

82. Defendant was recklessly indifferent to Plaintiff Buerkle's rights under state

law.

83. As a direct, natural foreseeable and proximate result of the actions and inactions of Defendant, i.e., discriminatory conduct, by and through its agents, officers and/or employees, Plaintiff was terminated from her employment on December 1, 2021, and has suffered pecuniary and nonpecuniary injuries, losses, and/or damages, including a violation of her statutory rights, economic losses/loss of employment, out of pocket expenses, loss future earnings, as well as compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity and humiliation.

**AS AND FOR A THIRD CAUSE
OF ACTION SOUNDING IN VIOLATION OF CITY HUMAN RIGHTS LAW
AGAINST THE DEFENDANT HEREIN
PLAINTIFF HEREBY ALLEGES AS FOLLOWS:**

84. Plaintiff hereby realleges and adopts each and every allegation in the aforementioned paragraphs as if fully set forth herein.

85. By denying her request for a religious exemption to the mandatory COVID-19 vaccination policy and terminating her employment, Defendant violated Plaintiff Buerkle's rights under the New York City Human Rights Law.

86. The City Human Rights Law provides, inter alia, that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of the actual or perceived . . . creed . . . of any person . . . to discharge from employment such person . . . ." N.Y.C. Admin. Code § 8-107(1). The City Human Rights Law further provides that "[i]t shall be an unlawful discriminatory practice for an employer . . . to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion . . . and the employer shall make reasonable accommodation to the religious needs of such person." Id. § 8-107(3).

87. Defendant was recklessly indifferent to Plaintiff Buerkle's rights under city law.

88. As a direct, natural foreseeable and proximate result of the actions and inactions of Defendant, i.e., discriminatory conduct, by and through its agents, officers and/or employees, Plaintiff was terminated from her employment on December 1, 2021, and has suffered pecuniary and nonpecuniary injuries, losses, and/or damages, including a violation of her statutory rights, economic losses/loss of employment, out of pocket expenses, loss future earnings, as well as compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity and humiliation.

**WHEREFORE**, Plaintiff Caroline Buerkle prays that this Court enter judgment against Defendant on her claims under Title VII, New York State Human Rights Law, and the New York City Human Rights Law, and award the following relief:

1) That this Court award Plaintiff economic, compensatory and punitive damages against Defendant in an amount to be proven at trial;

2) That this Court declare Defendant engaged in unlawful discrimination based on religion in violation of Title VII, New York State Human Rights Law, and the New York City Human Rights Law;

3) That this Court award Costs, interest, and attorneys' fees as required by Title VII and other statutes; and

4) That this Court order such other and further life as may be deemed just and proper.

**DATED:** October 28, 2022.

           **CHERUNDOLO LAW FIRM, PLLC**

By: *[signature]*
John C. Cherundolo, Esq.
Bar Roll No. 101339

*Attorneys for Plaintiff*
Office and Post Office Address
120 Madison Street
AXA Tower II, 16th Floor
Syracuse, New York 13202-2078
Telephone (315) 449-9500